97 N.J. Super. 528 (1967)
235 A.2d 495
CONSOLIDATED MUTUAL INSURANCE COMPANY, PLAINTIFF,
v.
SECURITY INSURANCE COMPANY OF HARTFORD, MARGARET DOLAN, SOPHIE OVERKLEEFT, HENDRICUS OVERKLEEFT, WILLIAM PHILLIPS AND LILLIAN PHILLIPS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 6, 1967.
*530 Mr. Donald B. Kaufman for plaintiff.
Mr. Thomas P. Ford, Jr. for defendant Security Insurance Company of Hartford.
MINTZ, J.S.C.
This matter is before the court on cross-motions for summary judgment made by plaintiff and defendant Security Insurance Company of Hartford (hereinafter referred to as Security). Plaintiff seeks a declaratory judgment to determine the extent of coverage as between it and Security respecting claims for personal injuries arising out of an automobile accident. It takes the position that its insurance policy only provides coverage in excess of that afforded by Security's policy.
On December 15, 1963 defendant Margaret Dolan was the owner of an automobile for which Security had issued to her a policy of liability insurance which was then in effect. On that date she attended a function at the Essex House, a hotel in Newark operated by the Essex Holding Corp. She drove her car to the hotel and there the doorman, Willie Lambert, an employee of the Essex House, gave her a parking ticket and accepted a parking fee of $1. Lambert then drove the car to Flynn's parking lot located to the rear of the Essex House. He parked the vehicle and turned over the parking fee to the operator of Flynn's. Essex Holding Corp. did not own, operate or control the parking lot and received no part of the parking fee. Upon leaving the hotel Margaret Dolan presented Lambert with her parking ticket. He thereupon went to the lot to pick up the vehicle and en route back to the hotel was involved in a collision. As a result of the accident certain claimants instituted a negligence action in the Superior Court, Law Division, wherein Margaret Dolan, Willie Lambert and Essex Holding Corp. are named defendants.
Plaintiff had issued a policy of comprehensive liability insurance to the Essex Holding Corp. which was in effect on December 15, 1963. It served notice upon Security to assume *531 the defense of Essex Holding Corp. and Willie Lambert in the negligence action, but Security has refused to do so, resulting in the institution of this proceeding. Security does not question its responsibility to defend Margaret Dolan in the negligence action.
Clearly, Lambert's operation of Margaret Dolan's vehicle was with her express permission. Accordingly, Lambert and Essex Holding Corp. became additional insureds under the Security policy. Apparently Security, being the insurer of the vehicle involved in the accident, concedes that were it not for any pertinent exclusion clause, primary coverage is afforded its insureds under the terms of said policy. Security, however, urges that under exclusion (g) in Part I of its policy, the insurance coverage does not apply "to an owned automobile while used in the automobile business, but this exclusion does not apply to the named insured * * *." Automobile business is defined in the policy as "the business or occupation of selling, repairing, servicing, storing or parking automobiles." Security contends that the accident occurred while the vehicle was being used in the business or occupation of parking automobiles and hence Lambert and Essex Holding Corp. are specifically excluded from coverage.
In the construction of policies of insurance, if the controlling language will support two meanings, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow. Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1 (1961). Where a policy provision relates to inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of coverage extended, but if the clause is one of exclusion or exception, designed to limit protection, strict interpretation is applied. The Ohio Casualty Insurance Company v. Flanagin, 44 N.J. 504 (1965).
Substantially the same exclusion clause here involved was considered in Le Felt v. Nasarow, 71 N.J. Super. 538, 555 *532 (Law Div. 1962), affirmed 76 N.J. Super. 576 (App. Div. 1962), cert. den. Le Felt v. Aetna Ins. Co., 39 N.J. 86 (1963). The court there held that the owner's automobile, in possession of an automobile repairman who was driving it for the purpose of testing repairs which he had made when a collision occurred, was not being "used in the automobile business" within the exclusion clause in the automobile liability policy. The exclusion clause relates to the "use" to which the automobile is being put and not to the occupation of the driver. In reaching that conclusion the court adopted the rationale of McCree v. Jenning, 55 Wash.2d 725, 349 P.2d 1071 (Sup. Ct. 1960). But, contra, see Karner v. Maynor, 415 P.2d 998 (Okla. Sup. Ct. 1966).
In the instant case, applying the views expressed in Le Felt, the Dolan vehicle was not being "used" in furtherance of the business of parking vehicles, but was merely being returned to its owner, as a service rendered by the hotel to its patrons. Under these circumstances the vehicle was not being "used" in the "automobile business" within the purview of the exclusion clause.
Chavers v. St. Paul Fire & Marine Ins. Co., 188 F. Supp. 39 (N.D. Ohio 1960), affirmed 295 F.2d 812 (6 Cir. 1961), also cited in Le Felt, is strikingly in point. There a restaurant patron left his automobile with the restaurant parking lot attendant. In endeavoring to park the vehicle the attendant lost control and struck the owner as he was walking toward the back entrance of the restaurant. The parking lot was supplied by the restaurant's lessor and was operated for the benefit and use of the customers of the various lessees of the lessor. The restaurant operator did not charge its patrons a fee for parking in the lot although it hired attendants to assist its patrons in the use of the lot. The court there said that the term "automobile business" as used in the insurance policy did not contemplate the restaurant owner's incidental service of providing convenient parking to its customers and further stated;
*533 "But even if there existed some doubt as to whether the operation of the parking lot ought to be treated as an `automobile business', we would again be confronted with the rule heretofore explained, i.e. that when an insurance policy contains language reasonably susceptible to different interpretations, it will be given the construction most favorable to the insured." (at p. 44)
In Piliero v. All-State Insurance Company, 12 A.D.2d 130, 209 N.Y.S.2d 90 (App. Div. 1960), the court was concerned with the effect of an exclusion clause in an automobile insurance policy in which "automobile business" was defined to include a "public parking place." In that case the plaintiff offered his services to patrons of a bakery and restaurant to park and return their cars as they were leaving. His sole remuneration consisted of gratuities which the patrons may have given him. His parking of the vehicles was done with the consent and permission of the owners of the restaurant. The lot, the restaurant and the building in which the restaurant was located were all owned by affiliated corporations. The owners of the restaurant and lot did not charge patrons for parking and did not permit the general public to park in the lot. The court there said that the operation of such a lot is not an "automobile business" but rather an incidental convenience furnished by the restaurant owner to his patrons.
So in the case at bar, the Essex Holding Corp. was not engaged in the business of parking of automobiles. It merely renders an incidental service to its patrons for which it makes no charge. As already observed, Lambert was the doorman for the Essex House, and was not an employee of the Flynn parking lot operation.
In any event, if the clause in question contains language susceptible to different interpretations, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage must be applied. Accordingly, the motion of the plaintiff is granted and the cross-motion of the defendant, Security, is denied. Security as the primary insurer is obliged to defend Essex Holding Corp. and Lambert in the negligence actions.